UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MILAD ISKANDER,

                 Plaintiff,

        v.

LIBERTY MUTUAL INSURANCE,

                 Defendant.

No. 2:24-cv-02750-JAM-SCR

**ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT IN PART**

This action concerns an insurance coverage dispute between Plaintiff, a homeowner, and Defendant, an insurer, over storm-caused damage to Plaintiff's home.  Defendant has sought summary judgment on all but one of Plaintiff's claims arising from that dispute and has also sought summary judgment on Plaintiff's claim for punitive damages.

As discussed further below, the Court declines to grant summary judgment on Plaintiff's bad faith claim.  However, the Court grants summary judgment on Plaintiff's claims for negligent infliction of emotional distress, intentional infliction of emotional distress, elder abuse, loss of use, and punitive damages.

1

## I.   FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Defendant Liberty Insurance Corporation[1] issued a homeowner's insurance policy number H37-268-053623-60 (the "Policy") to Plaintiff Milad Iskander for the policy period November 25, 2022, to November 25, 2023.  Def.'s Statement of Undisputed Facts ("Def.'s SUF") ¶ 1, ECF No. 13-3.  The Policy provided coverage for Plaintiff's residence located at 790 S. Regatta Drive, Vallejo, CA 94591 (the "Property"), where Plaintiff resides with his father Ed Iskander.[2]  Id. ¶ 2.

On January 16, 2023, Plaintiff reported that a storm had caused a hole in the roof of the Property which allowed water to enter the home.  Id. ¶ 7.  Plaintiff also reported that he had retained Trinity Perfect Construction, Inc. to install a tarp on the roof where he believed a hole existed.  Id. ¶ 9.  On January 22, 2023, Defendant retained an independent adjuster to inspect the Property and prepare a repair estimate.  Id. ¶ 10.  The adjuster was unable to remove the tarp on the roof to inspect the hole.  Id. ¶ 11.  On January 25, 2025, Plaintiff informed Defendant that his claim was limited to (1) the costs of installing the tarp on the roof; and (2) damage to the ceiling of an upstairs bedroom of the property.  Id. ¶ 12.

On February 28, 2023, Defendant retained Donan Engineering ("Donan") to inspect the Property and report on the cause of water damage and cracks in the home.  Id. ¶¶ 13-14.  Donan

___

[1] Erroneously sued as "Liberty Mutual Insurance."
[2] There appears to be some confusion in the Parties' briefings as to whether Milad Iskander or Ed Iskander is the father.  However, Milad Iskander filed a Declaration in support of Plaintiff's Opposition to Partial Summary Judgment which clarifies he is the son.  See Iskander Decl. ¶ 2, ECF No. 16-1.  Thus, the Court shall refer to Ed Iskander as Plaintiff's father.

concluded that: (1) the roof did not have any storm-created damage or openings, and any damage to the roof was consistent with age-related deterioration; (2) water stains in the interior of the home were caused by flashing deficiencies around the roof vents; (3) there was insufficient drainage around the house allowing excess moisture to accumulate; and (4) cracks in the home were unrelated to wind or other exterior weather events, and were instead due to differential soil settlement and expansion/contraction cycles of building materials caused by changes in temperature and moisture.  Id. ¶¶ 15-17; Tyer Decl., Ex. 7 ("Donan Report") at 76-84[3], ECF No. 13-2.  On March 1, 2023, Defendant sent a letter to Plaintiff outlining Donan's findings and Defendant's coverage position.  Def.'s SUF ¶ 18. Defendant agreed to cover water damage to the bedroom ceiling and the costs of installing the tarp on the roof of the Property. Id. ¶ 20.  However, citing Policy exclusions, Defendant declined to pay any additional amounts attributable to wear and tear, marring, deterioration; inherent vice, latent defect, mechanical breakdown; and settling, shrinking, bulging or expansion, including resultant cracking, of pavements, patios, foundations, walls, floors, roofs, or ceiling.  Id. ¶¶ 18-19.

In response, Plaintiff informed Defendant that he disagreed with the conclusions of the Donan report and would retain his own engineer.  Id. ¶ 21.  On May 11, 2023, Plaintiff submitted an estimate from Green Group Remodeling ("Green Group") in the amount of $195,000.  Id. ¶ 22.  Green Group is not an engineering firm but rather a remodeling company.  Id. ¶ 23.  This estimate

_____
[3] Citations to exhibits to the Tyer Declaration refer to the ECF pagination.

included replacement of the roof, replacement of the siding on the home, demolition and remodel of the bathroom, upgrades to plumbing and electrical work in the home, replacement of tile in the bathroom, and replacement of all appliances. Id. ¶ 24. On May 11, 2023, Defendant wrote to Plaintiff to inform him that the estimate submitted by Green Group was rejected because it included several items outside the scope of damage to the Property caused by the storm. Id. ¶ 27. Indeed, Green Group's representative confirmed that the estimate included work unrelated to any claimed wind or rain damage. Id. ¶ 26.

On June 12, 2023, Plaintiff submitted a report from Win Structural Consulting Group, Inc. ("Win"). Id. ¶ 28. The report, which was prepared by an engineer, related to the soil and foundation of the Property. Id. ¶¶ 29-30. The report stated that the soil on the house site was of poor drainage, and that cracking in the drywall and plaster of the home was the result of settling and recompacting of the soil surrounding the Property during multiple extended rain events between December 2022 and March 2023. Tyer Decl., Ex. 13 ("Win Report") at 116-22, ECF No. 13-2. The report also found that the roof was in good condition. Id. at 122. Defendant wrote to Plaintiff on June 15, 2023, informing him that, in its opinion, the Win report confirmed that the cracking in the drywall and plaster of the home was the result of settling and recompacting of the soil surrounding the Property after it was saturated with rain, which was consistent with the findings of Defendant's engineer, Donan, and consistent with Defendant's determination that policy exclusions applied. Id. ¶¶ 31-33. Thus, Defendant maintained its earlier coverage

4

determination.  Id. ¶ 33.

Plaintiff continued to contact Defendant during the next year to inquire about the status of his claim, with Defendant reiterating in every communication that it stood by its earlier coverage determination.  Id. ¶¶ 34-35.  On July 22, 2024, Plaintiff submitted a report from engineer Steven Viani, who opined that while the roof of the Property was generally in good condition, the eaves of the house showed that water had penetrated and affected the wood there, and water damage throughout the house, including the living room, upstairs bathroom, and garage, could have been caused by storm water penetrating the roof, i.e., "wind-driven rain from the wind velocity and from the mass of the water driven by the force of the rain."  Id. ¶¶ 36-37; Tyer Decl., Ex. 16 ("Viani Report") at 133-35, ECF No. 13-2.  Viani also stated that the soil around the house was not expansive and would not contribute to any cracking or movement of the house.  Viani Report at 135.  Two days after receiving the Viani Report, Defendant wrote to Plaintiff that it had considered the reports from Plaintiff's two engineers and had completed its evaluation absent new information.  Def.'s SUF ¶ 38.

Plaintiff filed suit in state court on August 22, 2024, asserting causes of action for (1) breach of insurance contract; (2) breach of the implied covenant of good faith and fair dealing; (3) negligent infliction of emotional distress ("NIED"); (4) intentional infliction of emotional distress ("IIED"); (5) elder abuse; and (6) "loss of use."  ECF No. 1.  Plaintiff seeks damages including "[c]osts for the direct repair of the

house," "[c]ompensation for loss of use of the house," "[c]ompensation for the infliction of emotional distress, both intentional and negligent," "[c]ompensation for the abuse of an elder," "[c]ompensation for the loss of time and energy," attorneys' fees, and punitive damages. Id.

Defendant removed this action on October 4, 2024, under diversity jurisdiction. Id. Defendant filed the pending Motion for Partial Summary Judgment (ECF No. 13) on November 7, 2025, seeking judgment in its favor on Plaintiff's Second through Sixth Causes of Action as well as Plaintiff's prayer for punitive damages. Plaintiff filed an untimely Opposition (ECF No. 16) on December 23, 2025, and Defendant filed a Reply (ECF No. 18). The matter was submitted without oral argument pursuant to Local Rule 230(g). ECF No. 17.

## II.  LEGAL STANDARD

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The principal purpose of summary judgment is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Thus, the "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-52 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

6

Under this standard, the moving party must inform the court of the basis for the motion and identify the portion of the record which it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. If the moving party meets its initial burden, the burden then shifts to the opposing party, which must establish that there is a genuine issue of material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585 (1986). To succeed and avoid summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. The opposing party must produce enough evidence such that the specific facts set forth by the nonmoving party, coupled with the undisputed facts, are sufficient for a reasonable jury to return a verdict in their favor. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987). In other words, for the moving party to succeed, the court must conclude that no rational trier of fact could find for the opposing party. Matsushita, 475 U.S. at 587. However, so as not to usurp the role of the jury, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and so the court draws all reasonable inferences and views all evidence in the light most favorable to the opposing party. Anderson, 477 U.S. at 255; Matsushita, 475 U.S. at 587–88.

## III. OPINION

### A.   Plaintiff's Untimely Opposition

As a threshold matter, Defendant contends that the Court should disregard Plaintiff's Opposition in its entirety and grant

Defendant's Motion because Plaintiff's Opposition, which was due November 21, 2025, was filed four weeks late.  Reply PSJ at 2-3, ECF No. 18.

Defendant is correct that Plaintiff's Opposition was untimely.  Defendant filed its Motion for Partial Summary Judgment on November 7, 2025.  Under Local Rule 230, Plaintiff's Opposition was due two weeks later, by November 21, 2025.  E.D. Cal. L.R. 230(c).  However, Plaintiff did not file his Opposition until December 23, 2025, a month later.  Further, Plaintiff failed to justify or otherwise explain this delay.  See generally Opp'n PSJ, ECF No. 16.  Given these facts, the Court would be well within its rights to construe Plaintiff's untimely Opposition as a non-opposition.  See E.D. Cal. L.R. 230(c) ("A failure to file a timely opposition may also be construed by the Court as a non-opposition to the motion.").

The Court will not do so here.  However, Plaintiff's counsel is ordered to pay sanctions in the amount of $250 for failing to comply with the deadlines set forth in the Local Rules.  The Court will address the merits of the Parties' arguments below.

B. There is a Dispute of Fact as to Whether Defendant Breached its Duty of Good Faith and Fair Dealing

Plaintiff alleges that Defendant, as Plaintiff's insurer, owed Plaintiff an implied duty of good faith and fair dealing, a duty which Defendant breached by "unreasonably denying and delaying payment of Plaintiff's valid insurance claim, failing to properly investigate the claim, and compelling Plaintiff to initiate [this] litigation[.]"  Compl. ¶¶ 16-17, ECF No. 1-2. Defendant argues that this claim fails as a matter of law because

the purported withholding of Policy benefits, whether correct or incorrect, was not unreasonable given that there was a genuine dispute as to Defendant's liability under the Policy.  Mot. Partial Summ. J. ("PSJ") at 8, ECF No. 13.

The Court denies summary judgment on this claim.  Under California law, all insurance contracts contain an implied covenant of good faith and fair dealing.  Wilson v. 21st Cent. Ins. Co., 42 Cal. 4th 713, 720 (2007).  A cause of action for breach of the implied covenant of good faith and fair dealing in the insurance context requires evidence that (1) benefits due under an insurance policy were wrongfully withheld, and (2) the reason for withholding the benefits was "unreasonable" or "without proper cause."  Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 823 (9th Cir. 2014).  In short, the "ultimate test of bad faith liability in the first party cases is whether the refusal to pay policy benefits . . . was unreasonable," and not as a result of mere negligence or bad judgment.  Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 346 (2001).

An insurer acts unreasonably when it fails to properly investigate the policyholder's claim.  See, e.g., Century Sur. Co. v. Saidian, No. 12-cv-7428 SS, 2016 WL 6440140, at *18 (C.D. Cal. Mar. 16, 2016).  "[W]hether an insurer breached its duty to investigate [is] a question of fact to be determined by the particular circumstances of each case."  Paulfrey v. Blue Chip Stamps, 150 Cal. App. 3d 187, 196 (1983).  Additionally, an insurer acts unreasonably when its investigation of the insured's claim is biased.  Allstate Ins. Co. v. Madan, 889 F. Supp. 374,

381 (C.D. Cal. 1995) ("[A]n insurer breaches the implied covenant of good faith by conducting a biased investigation.") (citation omitted).

An insurer also acts unreasonably when it ignores evidence that supports the policyholder's claim.  Id. ("An insurer is liable for bad faith if it disregards evidence supporting coverage."); see also Tetravue Inc. v. St. Paul Fire & Marine Ins. Co., No. 14-cv-2021 W BLM, 2018 WL 1172852, at *5 (S.D. Cal. Mar. 6, 2018) ("[B]ad faith may lie where a claim is denied on a basis unfounded in the facts known to the insurer, or contradicted by those facts or where the insurer ignores evidence that supports the insured's claim, and just focuses on facts that justify denial." (citation and internal quotation marks omitted)).

Here, the Court finds there is a genuine issue of material fact as to whether Defendant adequately considered Plaintiff's evidence supporting his claim.  The bulk of the record indicates that Defendant handled Plaintiff's claim in good faith.  Notably, Defendant: (1) had an adjuster "inspect[] the property within a week of being notified of the claimed loss;" (2) "retained an engineer to inspect the property and opine on the cause of any damage when Plaintiff expanded the scope of the claim;" (3) and "applied the opinions of that expert to the terms of the policy and concluded that exclusions applied."  Reply PSJ at 3. Plaintiff has pointed to no evidence that Defendant's adjuster or engineer were biased, or that their investigations were obviously deficient in any way.  Thus, Defendant was not unreasonable in rejecting Plaintiff's initial request for coverage based on those

opinions.

Defendant also argues that it fully "reviewed reports by Plaintiff's purported experts and concluded that those reports were consistent with the opinions of its retained expert" before ultimately denying Plaintiff's request to reconsider its coverage position. Id.  Here, the Court disagrees in part.  Plaintiff submitted two reports in support of his claim for coverage: the Win report and the Viani report.  When Plaintiff submitted the Win report, Defendant replied in detail explaining it had reviewed the report and found the conclusions therein to be consistent with those of its own engineer.  See Taylor Decl., Ex. 14, ECF No. 13-2 (responding to Win report).  Thus, Defendant provided a reasoned basis for rejecting Plaintiff's request to reconsider its coverage determination.

By contrast, when Plaintiff submitted the Viani report, Defendant again declined to reconsider its coverage determination two days later but stated only that it had "reviewed your engineer reports (2)" and "st[ood] behind our stance and the outcome."  See Taylor Decl., Ex. 17, ECF No. 13-2 (responding to Viani report).  The Viani report, however, called into question the Donan report's conclusion that soil around the house was the cause of cracking in the house.  Compare Viani Report at 135 ("The soil in the area of the house is not expansive and would not produce any cracking or movement of the house."), with Donan Report at 83 ("[T]he cracks in the house are due to differential [soil] settlement and differential expansion/contraction cycling of building materials.").  Further, unlike the Donan report, which found that any damage to the roof was consistent with age-

related deterioration and that water damage in the home was due to flashing deficiencies in the roof vents, the Viani report also indicated that storm-driven water may have affected the roof and caused water intrusion in the home.  Compare Viani Report at 135 (noting that the "wood on the eaves shows some water has penetrated the end of the eaves and affected the wood," and concluding that "water intrusion could have been caused by wind-driven rain from the wind velocity and from the mass of the water driven by the force of the rain"), with Donan Report at 83 (finding the "roof does not have any storm-created openings," "granule loss on the shingles is consistent with age-related deterioration of the shingles," and "water stains indicate flashing deficiencies around the roof vents").  Ultimately, Viani's and Donan's reports may be reconcilable.  However, the Court finds Defendant's lack of substantive response to the Viani report coupled with its speedy refusal to reconsider its coverage position sufficient to create a question of fact as to whether Defendant ignored evidence favorable to Plaintiff in conducting its investigation.

Defendant argues that it is shielded from liability here under the genuine dispute doctrine.  Ordinarily, that doctrine provides that an insurer cannot be found liable for bad faith for a coverage determination so long as it can show that its denial of coverage or delay in payment was the result of a genuine dispute between the insurer and insured as to coverage or the amount of loss.  Chateau Chamberay Homeowners Ass'n, 90 Cal. App. 4th at 347.  However, the genuine dispute doctrine does not constitute a blanket liability shield against claims of bad

faith.  As the California Supreme Court has cautioned, "[t]he genuine dispute rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim," as a "genuine dispute exists only where the insurer's position is maintained in good faith and on reasonable grounds."  Wilson, 42 Cal. 4th at 723.  Notably, an insurer is not permitted to ignore relevant evidence regarding additional coverage or benefits due without adequately investigating them.  See Zubillaga v. Allstate Indem. Co., 12 Cal. App. 5th 1017, 1027 (2017).

"Nor does the rule alter the standards for deciding and reviewing motions for summary judgment."  Wilson, 42 Cal. 4th 724.  Rather,

> The genuine issue rule in the context of bad faith claims allows a [trial] court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable— for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law . . . [o]n the other hand, an insurer is not entitled to judgment as a matter of law where, viewing the facts in the light most favorable to the plaintiff, a jury could conclude that the insurer acted unreasonably.

Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161–62 (9th Cir. 2002) (citations omitted).

Here, given that there is a genuine issue of material fact as to whether Defendant may have inadequately considered the Viani report, the Court declines to grant summary judgment on Plaintiff's bad faith claim.

///

C.   Plaintiff's Claim for NIED Fails as a Matter of Law

Plaintiff alleges that "Defendant's negligent handling of Plaintiff's insurance claim caused Plaintiff severe emotional distress."  Compl. ¶ 20.  Defendant argues that this claim fails as a matter of law because California law is clear that the relationship between an insured and insurer is contractual, not based on tort duties, such that negligence is not among the theories of recovery available against insurers.  PSJ at 11–13.

The Court agrees and Defendant's motion for summary judgment on this claim is granted.  There is conflicting authority as to whether a plaintiff may bring a NIED claim against an insurer. Compare Williams v. Integon Nat'l Ins. Corp., 191 F. Supp. 3d 1126, 1133 (S.D. Cal. 2016) ("[C]ourts have permitted [NIED] claims against an insurer based on alleged mishandling of an insured's claim for policy benefits." (collecting cases)), with Bates v. Hartford Life and Acc. Ins. Co., 765 F. Supp. 2d 1218, 1219-22 (C.D. Cal. 2011) (holding plaintiffs could not assert a NIED claim against the insurer because "[p]laintiffs confuse an independent claim for [NIED] and the possibility of damages for emotion[al] distress that may be recovered incidental to a bad faith action.  Plaintiffs may claim only the lat[t]er."). However, the Court need not resolve that issue here, as Plaintiff concedes he does not wish to bring a NIED claim.  Opp'n PSJ at 7. Rather, Plaintiff clarifies that he is seeking emotional distress damages in relation to his bad faith claim.  Id.  Defendant does not contest that emotional distress damages are potentially recoverable for an insurer's bad faith.  See PSJ at 12; Reply PSJ at 5.

14

Thus, the Court grants summary judgment on Plaintiff's NIED claim but Plaintiff may still seek emotional distress damages on his bad faith claim.

D.   Plaintiff's Claim for IIED Fails as a Matter of Law

Plaintiff alleges that Defendant intentionally caused him emotional distress by "unreasonably denying and delaying [his] insurance claim."  Compl. ¶¶ 23-24.  Defendant argues that this claim fails as a matter of law because "Plaintiff does not plead facts showing (1) extreme and outrageous conduct with intent to cause emotional distress, or (2) severe or extreme emotional distress."  PSJ at 13-16.

The Court agrees and grants summary judgment on this claim. For IIED, a plaintiff must allege: (1) outrageous conduct by the defendant; (2) the defendant intended to cause or recklessly disregarded the probability of causing emotional distress; (3) the plaintiff suffered severe or extreme emotional distress; and (4) the defendant's outrageous conduct actually and proximately caused the emotional distress.  Ross v. Creel Printing & Publ'g Co., 100 Cal. App. 4th 736, 744-45 (2002).  To support a claim for IIED, the plaintiff must allege the conduct exceeded all bounds usually tolerated by a decent society and was especially calculated to cause mental distress of a very serious kind.  Christensen v. Superior Ct., 54 Cal. 3d 868, 904-05 (1991).  In the insurance context, mere "delay or denial of insurance claims is not sufficiently outrageous to state a cause of action for [IIED]."  Coleman v. Republic Indem. Ins. Co., 132 Cal. App. 4th 403, 417 (2005).  Behavior may be considered outrageous if a defendant: (1) abuses a relationship or position

15

which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress. Hailey v. Cal. Physicians' Serv., 158 Cal. App. 4th 452, 474 (2007).

Here, Plaintiff has failed to plead or produce any evidence Defendant engaged in extreme or outrageous conduct in denying Plaintiff's insurance claim. At most, as held in Section III.B supra, Plaintiff has shown that Defendant's denial of insurance benefits may have been unreasonable. However, "[i]n the insurance context, the insurer's bad faith is not the kind of conduct that satisfies a claim for [IIED]." Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 383 (C.D. Cal. 1995). An insurer's "refusal to properly investigate, process and communicate with plaintiff concerning his claim," even if intentional and willful, is not "deemed 'outrageous' within th[e] definition" required for an IIED claim. Ricard v. Pac. lndemn., 132 Cal. App. 3d 886, 890, 895 (1982); accord Beckham v. Safeco Ins. Co. of Am., 691 F. 2d 898, 904 (9th Cir. 1982) (an insurer's refusal to settle a claim, whether in good faith or acting "wantonly and maliciously," "is not the kind of outrageous conduct necessary to support an action for [IIED]"). The conduct alleged here does not extend beyond bad faith. Accordingly, it is not outrageous as a matter of law and Defendant's motion for summary judgment on Plaintiff's IIED claim is granted.

///

///

16

E.   Plaintiff's Claim for Elder Abuse Fails as a Matter of Law

Plaintiff alleges that "Defendant's conduct in unreasonably denying and delaying Plaintiff's insurance claim caused financial and emotional harm to Ed Iskander, an elderly individual," constituting elder abuse.  Compl. ¶¶ 28-28.  Defendant argues that Plaintiff's claim fails as a matter of law because Plaintiff has failed to demonstrate Ed Iskander is an elder.  PSJ at 16. Defendant also argues that Plaintiff has failed to adequately allege, and cannot prove, Defendant's "wrongful use," "intent to defraud," "undue influence," or Defendant's knowledge that its conduct was "likely to be harmful to the elder" as required to support a financial elder abuse claim.  Id. at 17-19.

The Court grants summary judgment on this claim.  The Elder Abuse Act, codified in California Welfare and Institutions Code sections 15600 et seq., is intended "to protect a particularly vulnerable portion of the population from gross mistreatment in the form of abuse and custodial neglect."  Delaney v. Baker, 20 Cal. 4th 23, 33 (1999).  Pursuant to the Elder Abuse Act, financial abuse of an elder occurs when a person or entity takes or retains real or personal property for "wrongful use" or with "intent to defraud" or by "undue influence," and "knew or should have known that . . ." its conduct was ". . . likely to be harmful to the elder . . . ."  Cal. Welfare & Inst. Code § 15610.30(a)-(b).  An "elder" is defined as "any person residing in this state, 65 years of age or older."  Id. § 15610.27.

Here, Plaintiff fails to make the threshold showing that his father Ed Iskander is an elder under the law.  Plaintiff argues

17

in opposition to summary judgment that the "Verified Complaint specifically alleges Ed Iskander is an elder . . . ." Opp'n PSJ at 8. Specifically, Plaintiff alleges that "Ed Iskander [is] an elderly individual, as defined under California Welfare and Institutions Code Section 15610.27." Compl. ¶ 27. This conclusory allegation is insufficient to defeat summary judgment. See Hernandez v. Spacelabs Medical Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) (noting that a party "cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements").

As Plaintiff has failed to prove his father is over 65 years old, the Court grants summary judgment on Plaintiff's elder abuse claim.

        F.    Plaintiff Concedes Summary Judgment on his "Loss of
              Use" Claim

Plaintiff alleges that Defendant's "wrongful denial and delay of Plaintiff's insurance claim" resulted in Plaintiff's loss of use of the Property. Compl. ¶¶ 31–33. Defendant argues this claim fails as a matter of law because it is not a standalone cause of action, but rather a remedy for Plaintiff's breach of contract action. PSJ at 19–20.

Plaintiff admits that "loss of use" is not a standalone claim, although he argues that he "may still recover loss-of-use damages as part of his breach of contract and bad-faith claims." Opp'n PSJ at 8. Given Plaintiff's concession, the Court grants summary judgment in Defendant's favor on this claim.

///

///

G.    Plaintiff's Prayer for Punitive Damages Fails as a
      Matter of Law

Finally, Defendant argues that it is entitled to summary judgment on Plaintiff's request for punitive damages because Plaintiff's claims for bad faith and elder abuse fail as a matter of law, and because Plaintiff has failed to provide "clear and convincing evidence" of fraud, oppression, or malice as required to recover punitive damages under California Civil Code section 3294.  PSJ at 20–21.

The Court will grant summary judgment on Plaintiff's punitive damages claim.  As held in Section III.B supra, Plaintiff's bad faith claim does not fail as a matter of law. However, "[i]n order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively or fraudulently." Mock v. Mich. Millers Mutual Ins. Co., 4 Cal. App. 4th 306, 328 (1992).  Here, Plaintiff argues that a jury could reasonably find malice because (1) Defendant ignored engineering evidence; (2) refused to conduct a fair investigation; (3) subjected Plaintiff to continued property deterioration; and (4) demonstrated conscious disregard for Plaintiff's rights. Opp'n PSJ at 8–9.

The Court disagrees.  "Malice" is "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others."  Cal. Civ. Code § 3294(c)(1).  Where the finding of bad faith is close,

19

the "sufficiency of the evidence of bad faith . . . inevitably provide[s] a tenuous basis for supporting an award of punitive damages, since both the bad faith and punitive damage findings rest on inferences to be drawn from the same evidence." Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc., 78 Cal. App. 4th 847, 893 (2000). However, an insurer's mere careless evaluation of a claim and persistent refusal to reconsider its denial of coverage although its factual errors were called to its attention does not support an award of punitive damages because such conduct falls well short of establishing by clear and convincing evidence the sort of contemptible conduct that could be described as "despicable." See Amor Ministries v. Century Sur. Co., No. 3:13-cv-01441-GPC-BGS, 2016 WL 1388077, at *9 (S.D. Cal. Apr. 7, 2016); see also Food Pro Intern., Inc. v. Farmers Ins. Exchange, 169 Cal. App. 4th 976, 994 (2008); Tomaselli v. Transamerica Ins., Co., 25 Cal. App. 4th 1269, 1286-87 (1994). "Despicable conduct" is conduct that is so vile, base, contemptible, miserable, wretched, or loathsome that it would be looked down upon and despised by ordinary, decent people. Mock, 4 Cal. App. 4th at 331. In addition, the clear and convincing standard requires evidence that is "so clear as to leave no substantial doubt," and is "sufficiently strong to command the unhesitating assent of every reasonable mind." Amerigraphics Inc. v. Mercury Cas. Co., 182 Cal. App. 4th 1538, 1558 (2010).

Here, although the evidence in the record minimally supports Plaintiff's bad faith claim, "it is an entirely different issue of whether this evidence supports, by clear and convincing

evidence, a finding of malice or oppression." Shade Foods, Inc., 78 Cal. App. 4th at 910. Shade Foods, Inc. underscores the high bar for the sufficiency of the evidence to support malice or oppression in contrast to bad faith. In that case, the court found insufficient the insurer's initial inflexible position on complex coverage issues and failure to communicate with the insured and conduct a minimal investigation. Id. at 892. Notably, the insurer failed to conduct any meaningful investigation into the insured's claim, and "greatly overestimated its defenses," concluding there was no potential for coverage. Id. In addition, the insurer refused to consider any of the additional arguments made by the insured. Id. The court upheld the jury's bad faith award, finding that the defendant's conduct may have been unreasonable, but dismissed the punitive damage award, explaining that the question of bad faith was so close that the jury could not "reasonably find that it constituted clear and convincing evidence of 'despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights' or 'despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.'" Id. at 888, 893.

As in Shade Foods, Inc., the Court finds that the instant case presents only a "marginally sufficient case of bad faith." Id. at 909. While Defendant may have acted unreasonably in failing to conduct any further investigation into Plaintiff's claim following the submission of the Viani report, this conduct falls short of establishing by clear and convincing evidence the sort of contemptible conduct that could be described as

21

"despicable."  See, e.g., Food Pro Intern., 169 Cal. App. 4th at 994 (where an insurer's denial of coverage is the result of a "mistake of law or fact, honest error of judgment, overzealousness, mere negligence" an award of punitive damages is inappropriate as a matter of law).

Thus, the Court grants summary judgment on Plaintiff's claim for punitive damages.

**IV.   ORDER**

For the reasons above, Defendant's Motion for Partial Summary Judgment (ECF No. 13) is GRANTED in part.  The Court grants judgment in Defendant's favor on Plaintiff's:

1.   Third Cause of Action for Negligent Infliction of Emotional Distress;

2.   Fourth Cause of Action for Intentional Infliction of Emotional Distress;

3.   Fifth Cause of Action for Elder Abuse;

4.   Sixth Cause of Action for Loss of Use; and

5.   Claim for punitive damages.

Plaintiff's counsel shall pay $250 to the Clerk of the Court by February 24, 2026.

IT IS SO ORDERED.

Dated: February 17, 2026

JOHN A. MENDEZ,
SENIOR UNITED STATES DISTRICT JUDGE